IN RE GUARDIANSHIP OF ETHEL TIMPERLEY.
GERTRUDE KOBS, APPELLANT, V. HARRY F. TURNER, APPELLEE.
4 N. W. (2d) 603

FILED JUNE 19, 1942.    No. 31348.

*Coffey & Jorgensen,* for appellant.

*Max Fromkin, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

This action was brought to secure the removal of a guardian of an insane incompetent and the appointment of a suitable and competent person in his stead.    The county court granted the prayer of the plaintiff.    The district court denied it.    Plaintiff appeals.

The controversy arises from the following facts: William R. Turner died in 1908, intestate, leaving his widow and six children as his heirs at law.    In 1917 Harry F. Turner, a son, was appointed guardian of the estate and person of his sister, Ethel Timperley.    It is not questioned that she then was and has since been insane and confined in an institution. The guardian's acts in dealing with his ward's property are questioned only in three particulars:    First, there was a small amount of bank stock belonging to her which he did not report to the court until it was assessed for a stockholders' liability.    He secured a court order to pay the assessment.    He explains the failure to report this stock as an oversight.    Second, there was some South Dakota real es-

tate belonging to his ward which he, the guardian, considered worthless. He refused to assume liability for it, paid no taxes on it, and did not report it to the court as property of his ward's estate. Third, the widow died in 1922 and the competent children (*i. e.,* the defendant and his four sisters) desired to have the real estate consisting of over 700 acres of land sold and the proceeds divided among them.

Harry F. Turner (defendant herein) and his four sisters as plaintiffs brought an action to partition the estate making parties defendant Ethel Timperley, the incompetent, and Turner as her guardian. Turner then, as guardian, filed an answer admitting the allegations of the petition and joining in the prayer for partition. A guardian *ad litem* was appointed for the incompetent, who filed a general denial and joined in the prayer for a partition. Hearing was had and a referee was appointed. He reported that the property could not be divided and it was ordered sold. At the referee's sale a part of the property was sold to one of the attorneys, a part was sold to a sister, and a third part consisting of 421 acres received a bid of $14,000 from an outside party. This Turner considered inadequate and he asked the referee to continue the sale to the following day. On the second day Turner bid for the property until it was sold to him for $24,100. The sales were confirmed, payments made, deeds issued, and Turner has been in possession of the property since that date. He accounted to his ward's estate for the proceeds. It appears that the same firm of attorneys represented the plaintiffs (Turner and others) and the defendant Turner as guardian throughout the partition action. It further appears that the guardian *ad litem* occupied office space with the attorneys, although no showing is made of connections with the firm otherwise.

Plaintiff, as a daughter of the incompetent, brings this action seeking the removal of Turner as guardian on the grounds that he purchased the property for an inadequate consideration, that while the guardian of the incompetent he could not become the purchaser in his own right of the incompetent's property at the partition sale, and that he

failed to report the bank stock and the South Dakota land as property of his ward.

Turner, as defendant herein, contends that the sale was under orders of a court; that his individual interest was as great as that of his ward; that he had the right to buy to protect his own interest; and that he paid full value for the property; and resists his removal.

We have then presented this situation as to the sale of the land. The plaintiff contends that the sale is void, or at best voidable; the defendant contends it is valid. We are asked to determine that question in an action, initiated in county court, that has for its object the removal of the guardian and the appointment of another person in his place.

The following conclusions are apparent: (1) Turner recognizes no interest of his ward in the land. (2) If there is any merit in the contentions made by the plaintiff, they present questions in which the incompetent's estate has a direct and vital interest. (3) That interest, if it exists, is one which is in conflict with and antagonistic to the personal interest of Turner, the guardian. (4) The plaintiff in this action does not have authority to speak for and does not represent the incompetent. (5) The issues presented will not and cannot be properly determined in an action wherein Turner represents both his ward and himself. (6) The only way that these questions can be determined is by the removal of Turner as guardian and the appointment of a suitable and competent person as guardian who will have but one possible interest to serve, and that the interest of the incompetent and the conservation and protection of her estate. "Among grounds sufficient to warrant the removal of a guardian may be mentioned * * * existence of interests of the guardian adverse to those of the ward." 28 C. J. 1101.

This court has said: "Where a guardian places himself in a position with respect to the estate which brings his interests in conflict with those of his ward, he should be discharged and his letters revoked." *Robertson v. Epperson,* 78 Neb. 279, 110 N. W. 540. "When any guardian * * * shall become * * * incapable of discharging his trust, or evidently unsuitable therefor, the court, after notice to such

guardian and all others interested, may remove him." Comp. St. 1929, sec. 38-507. This court has said: "We think the word 'unsuitable' in the statute is very broad in its meaning, and applies to every case where the guardian for any reason is shown not to be capable of or *not in a situation to suitably protect his ward's interests.*" (Italics supplied.) *Crooker v. Smith,* 47 Neb. 102, 66 N. W. 19.

We do not here determine the questions presented, save to the extent of holding that the guardian is shown to have placed himself in a situation where he cannot now suitably protect his ward's interests in the controversies that have arisen, and because of that he should be removed as guardian and a suitable and competent guardian named in his stead.

The judgment of the district court is reversed and the cause is remanded for further proceedings in accord with this decision.

REVERSED.