IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BIEL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TEETHLOACH BIEL, APPELLANT.

Filed February 14, 2023.    No. A-22-710.

Appeal from the District Court for Douglas County: TODD O. ENGLEMAN, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Natalie M. Andrews for appellant.

Douglas J. Peterson, Attorney General, and Teryn Blessin for appellee.

MOORE, RIEDMANN, and WELCH, Judges.

MOORE, Judge.

INTRODUCTION

Teethloach Biel appeals from the order of the Douglas County District Court which denied Biel's motion to transfer his criminal case to the juvenile court. Finding no abuse of discretion, we affirm.

BACKGROUND

On February 15, 2022, Biel was charged by information with Discharging a Firearm at Inhabited House, Occupied Building, Occupied Motor Vehicle; a Class ID felony. On June 3, Biel filed a motion to transfer the case to juvenile court. A hearing was held on August 11. At the hearing on the motion to transfer, testimony was heard from an Omaha Police Department detective and an employee of the public defenders' office. Numerous exhibits were received in evidence including police reports; photographs; a surveillance video; the deposition of Colleen Conoley, Ph.D.; the juvenile intake summary; and other miscellaneous articles and reports.

- 1 -

According to the police reports, the incident occurred on October 7, 2021, when Biel was 15 years old. Police responded to a report of shots fired in a business parking lot at 12:30 p.m. Witnesses in the area stated they observed five black males in the parking lot and observed one of the males shooting at a white vehicle. A witness then saw three males running in a certain direction and directed police to a particular address. Police were able to view the surveillance video which showed five males entering the store prior to the shooting and purchasing an item. These individuals then gathered in the parking lot at which time the victim vehicle pulled into the parking lot to go through the drive-thru of a business. The video showed a black male, wearing a blue jacket, black pants, black and white shoes, and one gray glove on his right hand fire multiple rounds at the victim's vehicle from a semi-automatic handgun. Following an investigation and search of the residence in question, Biel was ultimately identified as the shooter.

Detective David Ullery of the Omaha Police Department, a member of the gang intelligence unit, was involved in the investigation of the shooting incident. He was notified that witnesses saw the parties involved in the shooting run to a residence that Ullery was familiar with as the location where certain gang members resided. Ullery testified that he recognized the male in the security camera still photograph and was ultimately able to identify him as Biel, who Ullery indicated was a member of a certain gang.

Melissa Driscoll, Juvenile Court Coordinator for the Douglas County Public Defender's Office, testified generally to the processes and services that are available to individuals through juvenile court. Because of the gun involvement in this case, Driscoll indicated that kids in those types of cases go to out-of-state placements, or to the Kearney YRTC. Driscoll also confirmed that Biel had not previously been involved in the juvenile court system.

A deposition of Colleen Conoley, Ph.D, dated December 4, 2014, taken in connection with unrelated cases, was received in evidence. Conoley, a neuropsychologist, generally testified about the development of the adolescent brain.

On September 15, 2022, the district court entered an order overruling the motion to transfer. In its thorough, 17-page order, the court analyzed each of the statutory factors under Neb. Rev. Stat. § 43-276(1) (Cum. Supp. 2020), which we set forth in further detail below. A pretrial conference was then scheduled for October 27, 2022. Biel appeals the order denying his motion to transfer.

ASSIGNMENT OF ERROR

Biel assigns that the district court abused its discretion in denying his motion to transfer the case to juvenile court.

STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Bluett*, 295 Neb. 369, 889 N.W.2d 83 (2016). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

ANALYSIS

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Supp. 2021).

In the instant case, when Biel moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in § 43-276(1):

> (a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." See § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less

- 3 -

weight is assigned to a specific factor." *Id*. "The burden of proving a sound basis for retention lies with the State." *Id*. We set forth the district court's analysis of the statutory factors below.

Under subsection (a), the type of treatment Biel would most likely be amenable to, the district court first noted that the current charge carries a mandatory minimum sentence of 3 years' imprisonment, and given Biel's age (he turned 16 on August 16), there would not be sufficient time under the jurisdiction of the juvenile court to serve this sentence. The court further noted that despite the evidence presented regarding rehabilitative services and placements that would be available to Biel, the court agreed with the State that given the "complete depravity and callousness" of Biel's actions, he would most likely need to be placed at a facility similar to the YRTC in Kearney, which would most likely result in a typical stay of not more than one year. The court concluded that "given the impulsive nature of this offense, coupled with [Biel's] complete lack of concern for the safety of the general public in [openly] discharging a firearm in broad daylight in the direction of multiple occupied vehicles, it is clear [Biel] would only benefit from an extended term of incarceration." The court found this factor weighed in favor of denying the transfer.

Next, the court found that the charged offense included "extreme" violence and weighed "extremely heavy in denying the motion to transfer" under subsection (b) of § 43-276(1). Under subsection (c), the court gleaned Biel's motivation for the offense from viewing the surveillance video, concluding that it was an apparent attempt to murder or cause great bodily harm to the intended victims. Based on the video, the court also rejected Biel's claim that he was acting in self-defense. The court found this factor also weighed heavily in denying the motion to transfer.

Under § 43-276(1)(d), the age of the juvenile and the ages and circumstances of any others involved in the offense, the court noted that Biel will be 16 years old at the time of the order and potential trial. Another individual with Biel at the time of the offense is a known gang member and is currently awaiting prosecution on a murder. The court concluded that the evidence under these factors further justify denial of the motion.

The court recognized that relative to subsection (e), Biel's previous history, he has not had any convictions or been under the jurisdiction of the juvenile court. However, the court found that his lack of a previous record, when weighed against the very serious nature of this charge, does not in and of itself justify a transfer to juvenile court. Similarly, the court concluded under the best interest of the juvenile factor, subsection (f), that although it may always be in a defendant's best interest to be transferred to juvenile court as opposed to being exposed to the possibility of a lengthy sentence of incarceration, such does not justify a transfer when weighed against the extreme violence attached to this offense.

With regard to subsection (g) of § 43-276(1), consideration of public safety, the court found that the "extreme violence" displayed by this offense, coupled with the complete lack of concern for the general public," weighed heavily in favor of denial of the motion to transfer. The court next concluded that Biel's conduct suggested that he clearly appreciated the nature and seriousness of his actions and this type of conduct would be "atypical of a mere juvenile." See § 43-276(1)(h). The court also found this factor weighed heavily in favor of denial of the motion.

In analyzing subsection (g), the court found that Biel faces significantly more time if sentenced than would be available should his case be transferred to juvenile court and that detention well beyond Biel's minority was necessary for the security of the public.

With regard to the remaining factors, subsections (i) through (n), the court found mediation and juvenile diversion would not be applicable due to the nature of the offense, Biel has not previously been convicted of firearm charges (although this offense clearly resulted from him possessing and discharging a firearm), no previous court order had been issued pursuant to Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016), and the evidence shows that Biel is either affiliated or associated with, or is an active member of "Trip Set" gang. Finally, under "other matters", subsection (o), the court rejected Biel's argument that the fact that no persons were injured in the incident supported a transfer to juvenile court.

The district court concluded that a sound basis existed to retain jurisdiction and overruled the motion to transfer.

Biel argues that the district court abused its discretion in denying the motion to transfer to juvenile court. Specifically, he argues that the State failed to meet its burden, that the district court's rationale for the denial was not supported or was refuted by the evidence, and the court was misguided in its reliance in holding Biel's exercise of his constitutional right to remain silent against him. We disagree.

In our review, we find the district court's rationale for denial of the motion to transfer was fully supported by the record. The court explicitly noted all of the evidence it reviewed, including the video evidence of the incident showing Biel chasing after the subject vehicle on foot while firing multiple shots towards the vehicle (and in the direction of other traffic) as it was fleeing the parking lot. Clearly, the seriousness of the crime and the need to protect the public weighed significantly in the court's decision to retain jurisdiction. Although there was evidence about potential rehabilitative services available to Biel, we agree with the district court that there does not remain sufficient time to effectuate the level of rehabilitation Biel requires within the confines of the juvenile court jurisdiction.

The district court briefly mentioned Biel's exercise of his right to remain silent in connection with factor (h), the consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct. The court first discussed Biel's conduct of chasing after the subject vehicle, drawing and discharging a firearm in broad daylight and indiscriminately firing in the direction of the subject vehicle and other vehicles traveling in the area, finding that such conduct "shows a level of depravity beyond a mere juvenile." The court found that someone who possesses a loaded firearm and makes a conscious decision to discharge it at another human "must clearly appreciate the nature and seriousness of their actions . . . and . . . is the type of conduct that would be atypical of a mere juvenile." The court then noted also that Biel's exercise of his right to remain silent was of the level of comprehension to show that he fully appreciated the nature and seriousness of his conduct. We find nothing improper in the district court's mention of Biel's exercise of his right to remain silent in this context.

We conclude that the State met its burden of showing a sound basis for the district court to retain jurisdiction. We find no abuse of discretion in the district court's denial of Biel's motion to transfer his case to juvenile court.

## CONCLUSION

The district court did not abuse its discretion in overruling Biel's motion to transfer the case to juvenile court.

AFFIRMED.